[Civ. No. 21889.   Second Dist., Div. Three.   Feb. 1, 1957.]

THE PEOPLE, Appellant, v. ONE 1949 PLYMOUTH SEDAN, ENGINE NO. P151029529, Defendant; JOHN HAROLD WAGNER, Respondent.

Edmund G. Brown, Attorney General, and Joan D. Gross, Deputy Attorney General, for Appellant.

John H. Marshall and Harold J. Ackerman for Respondent.

SHINN, P. J.—The proceeding is one for the forfeiture of an automobile pursuant to the provisions of section 11610 of the Health and Safety Code, the ground of the claimed forfeiture being that the vehicle was one in which a narcotic was unlawfully possessed by an occupant thereof or which was used to facilitate the unlawful possession of a narcotic by an occupant thereof.   The proceeding was against John Harold Wagner, the owner of the car.   Wagner was arrested while seated in the car and was taken to the police station where he was found to have some 32 marijuana cigarettes and

a bindle of heroin. The only witness was Vernon C. Dossey, a police officer for the City of Los Angeles. Upon conclusion of the receipt of evidence defendant moved that the testimony of Dossey be excluded upon the ground that the evidence of the possesison of narcotics had been illegally obtained as the result of an unlawful arrest and an illegal search. The motion was granted, judgment was entered for the restoration of the car to Wagner and the People appeal.

The only question presented to the trial court for decision was whether the fact that Wagner possessed narcotics was ascertained in an illegal manner, namely, whether his arrest was unlawful and the subsequent search illegal. That is the only question for our consideration. We are of the opinion that there was no illegality involved and that the court was in error in granting the motion of the defendant.

There was evidence of the following facts: Officer Dossey, three or four months prior to the date of the arrest, was informed by a man he knew to be a user of narcotics that Wagner was selling narcotics in the vicinity of the Red Hut Drive-In; that he possessed a car such as he was using on the night of the arrest; that he usually would be found in the vicinity of the drive-in between 11 o'clock p.m. and 4 or 5 o'clock a.m., where he was selling marijuana. About two months, and again about four days prior to the arrest, Dossey received information from another informant, also a narcotic user, and further information from the first informant that Wagner was still selling marijuana in the same location; that he kept the marijuana in his undershorts and was using heroin. Following the receipt of the first information Dossey and his partner made a practice of watching the defendant in the location of the drive-in. They had been informed that the most likely time for them to find Wagner in the possession of narcotics would be on Friday nights when there were many people gathered at the location. Between the time they had received the first information and the night of the arrest they had observed Wagner at the location approximately 40 or 50 times. During this period Dossey had become acquainted with the defendant and with the fact that he was unemployed. Wagner would come to the location about 11 o'clock p.m. and was under observation by the officers on the nights when they did watch him until about 3 o'clock a.m. Wagner never entered the drive-in for food or drink. He "hung around" on the lot and contacted a great many people

in their automobiles and throughout the drive-in area. He did not appear to be transacting any business, unless it was a traffic in narcotics. It was developed on cross-examination that the first informer mentioned had furnished the officer information upon the strength of which he had made narcotic arrests of other persons. When pressed for names the officer named a girl he had arrested upon information received from the first named informer and she "was held on addiction." The officer was on friendly terms with this informer and had received information from him at various times. Although he did not testify that he considered the information reliable it was inferable that he so considered it, inasmuch as he acted upon it, and in the one particular instance which he related in his testimony the information had proved to be accurate. The officer did not testify whether he had ever seen defendant pass anything to any of the people he contacted around the drive-in or that he ever saw defendant receive any money from anyone.

On the night of the arrest defendant was seated in his car parked at the curb directly adjacent to the driveway leading into the drive-in. Defendant was seated behind the wheel doing nothing. The officers parked behind him and Dossey proceeded to defendant's car, opened the door and arrested defendant. He was ordered to drive to police headquarters where he was searched and produced the narcotics which were taken from underneath the elastic band of his shorts. It is our opinion that any police officer actively engaged in apprehending purveyors of narcotics who received the information that Officer Dossey had received from two different users of narcotics, and who had on 40 or 50 occasions observed the conduct of an accused as described by the witness, would have reasonable grounds for believing that the person under surveillance was engaged in the sale of narcotics. We agree with the trial judge that the gathering of young people around a drive-in restaurant during late hours of the night and the early morning hours in itself is suggestive of no wrong-doing. It is generally known to be a common practice of young people who are inclined to sociability and find such locations convenient for social gatherings. This is merely one of the phenomena of the automobile age. But the facts of defendant's case are far different. His conduct was sinister. The very fact that for months he had made a practice of contacting many people who congregated at the drive-in was enough to place him under sus-

picion. He was obviously engaged in some sort of business transactions carried on secretly. But this was not the sole reason for his arrest. There was the additional fact that the officer had received information that defendant was selling narcotics. This, plus defendant's activities, which had the appearance of lawbreaking, amply justified an honest and strong suspicion that defendant was making a business of the sale of narcotics. (See *People* v. *Moore*, 141 Cal.App.2d 87 [296 P.2d 91].)

The order is reversed with instructions to enter a judgment of forfeiture of the automobile.

Wood (Parker), J., and Vallée, J., concurred.